UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 OCT 20 AM 9: 18

BY_____
DEPUTY CLERK

BRIAN CROTEAU Sr., LARRY PRIEST,
RICHARD PURSELL on behalf of themselves
and all others similarly situated,
                    Plaintiffs,

            v.

CITY OF BURLINGTON,
                    Defendant.

Civil Action No. 5:17-cv-207

## COMPLAINT

### Introduction

Dozens of unsheltered homeless people live in the City of Burlington (Defendant, hereinafter the "City"). They sleep outside year-round because there is no place for them to go. Burlington's emergency shelters are almost always full, temporary and permanent housing is unaffordable, and rental subsidies through Burlington Housing Authority have a years-long waitlist. Those who wind up stuck out on the streets do their best to shelter themselves by "camping" in tents or other temporary structures on public property; usually in the City's out-of-the-way wooded areas. Stephen Marshall, a voting member of the Chittenden County Homeless Alliance Steering Committee, estimates that at least 30 people currently sleep and shelter themselves in Burlington's wooded areas owned by the City. *See* Marshall Decl. ¶ 12, Attachment to Plaintiff's Emergency Motion for Temporary Restraining Order.

Despite the lack of available shelter, the City on a regular basis forcibly "removes" individuals who sleep and shelter themselves on City property. To accomplish the "removal," the City threatens these residents with arrest for trespassing and with seizure of any personal

property remaining on City property if the residents do not vacate their camping area by a particular date. The City asserts its actions are in accordance with Vermont's trespass statute. *See* 13 V.S.A. § 3705. And, over the course of several years, the City in this manner has repeatedly threatened homeless residents with arrest, seized personal property left behind, and destroyed the seized property.

Plaintiffs Brian Croteau, Larry Priest, and Richard Pursell, and putative class members, are homeless individuals sleeping and sheltering on City property because they have no other option. The City affirmatively bans them from sheltering in all other public places. *See e.g.* Burlington Code of Ordinances 22-7 ("Camping in Parks Prohibited"). The Plaintiffs have attempted to access emergency shelter and have repeatedly been turned away because those shelters are full. According to the City's policy, practice, and ordinances these individuals cannot lawfully sleep or shelter anywhere within City limits.

Plaintiffs Brian Croteau, Larry Priest, and Richard Pursell live in tents in a remote wooded area off of North Avenue in Burlington. The City plans to clear Plaintiffs' encampment on October 23, 2017 for violating 13 V.S.A. § 3705 on the City's remote wooded property. The City has served warnings and notices on multiple homeless encampments on the City's remote wooded property, including Plaintiffs' pursuant to13 V.S.A. § 3705. Despite the fact that winter and cold weather are fast approaching, the City has not provided shelter or other alternatives for Plaintiffs and members of the putative class. Instead, the City has threatened them with arrest, and the seizure and destruction of their property. *See* Diaz Decl. ¶ 12.

Like other unsheltered homeless people in the City, as a result of the City's enforcement of 13 V.S.A. § 3705, Plaintiffs are at imminent risk of being removed or arrested solely for attempting to meet their basic human need for sleep and shelter. Further, Plaintiffs' property is at imminent risk of being confiscated and destroyed.

## Jurisdiction and Venue

1. This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

3. Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

4. Injunctive relief is authorized by Federal Rule of Civil Procedure 65.

5. This Court has personal jurisdiction over the City of Burlington because it is located in the District of Vermont and the events that give rise to this action occurred within the District of Vermont.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Named Plaintiffs

7. Mr. Croteau Sr. is a resident of Burlington, Vermont.

8. Mr. Priest is a resident of Burlington, Vermont.

9. Mr. Pursell is a resident of Burlington, Vermont.

## Defendant

10. The defendant, City of Burlington, is a municipality located in Chittenden County, in the State of Vermont, with administrative offices at 149 Church Street, Burlington, VT 05401.

11.    At all times relevant to this suit, the defendant was and is a "person" acting under color of law for purposes of 42 U.S.C. § 1983.

## Facts

### A.  The City's Policy and Practice of Punishing the Unsheltered Homeless For Sleeping and Sheltering on Public Land

12.    The City of Burlington has systematically and arbitrarily sought to remove unsheltered homeless individuals sleeping and sheltering on public land, such as the Plaintiffs and members of the putative class, pursuant to 13 V.S.A. § 3705.

13.    In relevant part, 13 V.S.A. § 3705 provides that "[a] personal shall be imprisoned for not more than three months . . . if, without legal authority or the consent of the person in lawful possession, he or she enters or remains on any land or in any place to which notice against trespass is given . . . ." 13 V.S.A. § 3705(a)(1).

14.    Since at least 2014, the City of Burlington has used 13 V.S.A. § 3705 to threaten to arrest homeless residents and seize/destroy their property when they are found sleeping or camping on public property, despite city officials knowing the shelters are full.

15.    When the City identifies a camp of homeless residents on public land, the City's policy and practice is to 1) review the situation internally, 2) post a "notice to vacate" threatening arrest and seizure of property for anyone or anything remaining after a specified date, 3) enter the area on the specified date and remove and discard any property that remains.

16.    The standardized "notice to vacate" states:

All people currently living or visiting this area without the permission of the Owner of this property (City of Burlington) are being given notice by the Owner that You are trespassing on the property and must take your things and leave and not return or face prosecution under 13 V.S.A. § 3705 for trespass and removal of the things you leave on the property.

17. The City enforces its policy of "evicting" such homeless residents without regard to whether social service providers can provide shelter, housing, or other supports.

18. The City enforces its policy of "evicting" such homeless residents even when its employees know that local emergency shelters are full.

19. The City enforces its policy of "evicting" such homeless residents despite its knowledge that local emergency shelters have not had enough capacity to provide a shelter bed to the city's homeless residents for months, if not more than a year.

20. According to an October 10, 2017 statement from City of Burlington Police Chief del Pozo, the City concluded that it had the authority to "disband" a camp of homeless residents because "[e]stablishing domiciles on public land . . . is an act of trespass."

21. The City's policy and practice also includes removing and discarding any belongings that remain at the site, including tents, sleeping bags, and any other life-sustaining property or other personal property.

22. The City does not provide an opportunity for people to retrieve their items after the seizure, even if the property was not immediately discarded.

23. The City's practice is not to seek or obtain warrants for the search of the personal property or the seizure of personal property.

24. Repeatedly, the City has indicated that any property remaining on the noticed date to vacate is "abandoned" or "debris."

25. According to Chief del Pozo, such items are then viewed as "dumped" on city land and immediately "discarded."

26. In fact, any property "abandoned" on City land does not subject the person "abandoning" such property to a violation of the Dumping Ordinance contained in the Burlington Code

of Ordinances.[1]

27.    According to an October 10, 2017 statement from Chief del Pozo, this policy has shifted
       such that seized personal possessions deemed by the City to be "of value" would be
       stored.

28.    The City's policy remains unclear.

29.    Regardless, the City's policy and past practice is to seize the property without a warrant,
       and to not provide notice to the homeless property owners about how to retrieve their
       property after it is seized.

30.    Even if the City does provide such notice, during the time the property is seized,
       Plaintiffs rights are violated.

31.    The City has an ordinance that bans camping in public parks at night.

32.    The City has an ordinance that bans obstructing pedestrians rights of way.

33.    On information and belief, law bans obstructing vehicular traffic.

34.    The City's laws combined with its policy of punishing unsheltered homeless people,
       when shelter emergency space is unavailable, effectively bans such persons from having
       any place in the city to sleep or shelter within the City.

       **B.  The Lack of Emergency Shelter in Burlington, Vermont.**

35.    The City's local emergency shelters for the homeless have been regularly full for years.

36.    COTS is one of two emergency homeless shelters in Burlington.

37.    COTS has 36 individual shelter beds.

---

[1] 14-6 Illegal Dumping

   (a)  It shall be unlawful for any person, business or corporation to enter any City facility when such facility is not open, nor
        shall they deposit, dump or leave solid waste of any kind in any such facility or adjacent thereto, whenever the facility
        is open without the express permission of the authorized operator of said facility.

   (b)  It shall be unlawful for any person to deposit, dump or leave solid waste in any privately owned or maintained disposal
        container other than their own, nor any other private property, without the consent of the owner.

   (c)  It shall be unlawful to deposit in a municipally owned or maintained disposal container any solid waste other than that
        created or originated in any public buildings, grounds, highways or on the person of anyone using such public

6

38.   As of October 19, 2017, COTS was at capacity, lacking any available space.

39.   COTS does not have a waitlist for shelter. Its beds are first come, first serve, on a daily
      basis.

40.   ANEW Place is one of two emergency homeless shelters in Burlington.

41.   ANEW Place is at capacity.

42.   ANEW Place has a waitlist.

43.   On information and belief, COTS and ANEW Place have been at or near capacity every
      night for over one month.

44.   For at least the last two years, the City's local emergency shelters have never had the
      capacity to provide a bed to every homeless person in Burlington.

45.   Those needing emergency shelter far outnumber the available beds in local emergency
      homeless shelters.

46.   Even when the seasonal winter warming shelter is open, there has been a need for more
      beds.

47.   In recent winters, people have died from exposure apparently due to the lack of available
      emergency shelter beds.

48.   Vermont's emergency shelter motel voucher program for homeless individuals has a
      criteria that, as a practical matter, is difficult if not impossible for many homeless
      individuals to meet. *See* Vermont Department for Children and Families General
      Assistance Rule 2652.3.[2]

49.   Vermont's emergency shelter motel vouchers for homeless individuals have caps on the

---

buildings, grounds or highways without the express permission of the City Department having control over such
      container.

[2] Emergency housing is available to indidivuals meeting strict criteria for an annual maximum of 28 days. For those who are not
elderly, receiving SSI or SSDI, parenting custodial children under six years old, or in the third trimester of pregnancy, individuals
must have specificed and combined conditions providing them enough "points" to qualify.

number of days a person can access that benefit.

50.     Vermont provides emergency motel vouchers under a "cold weather exemption."

51.     On information and belief, the "cold weather exemption" provides motel vouchers for

        any one night where the temperate goes below 20 degrees Fahrenheit, or 32 degree

        Fahrenheit when there is precipitation, but not under any other conditions.

### C. The City's Unsheltered Population Surviving on Public Land

52.     There are dozens of unsheltered homeless people surviving in wooded areas owned by

        the City.

53.     There are dozens of unsheltered homeless people living in wooded areas owned by the

        City.

54.     Stephen Marshall, a voting steering member of the Chittenden County Homeless Alliance

        estimates that there are approximately 100 unsheltered homeless residents living in

        Burlington's woods for lack of anywhere else to turn.

55.     According to the Vermont Agency of Human Services Point in Time Count Report,

        "unsheltered" means "living in a place unfit for human habitation, such as in the woods,

        on the street, or in a car."

56.     The vast majority of those who are homeless would prefer the security and stability of

        standard hard-wall housing.

57.     Unsheltered homeless individuals in Burlington resort to "camping" as a necessity.

58.     The City's dismantling of their "camps" is disruptive and destructive to persons who live

        in them, forcing those individuals to move on to another, even less stable location,

        without their belongings, to await further action by City officials.

### D. The Named Plaintiffs and the City's Threats of Imminent Arrest and Property Seizure

59. Brian Croteau Sr. was born in Burlington, Vermont.

60. Mr. Croteau Sr. has lived in Burlington, Vermont for approximately thirty years.

61. Mr. Croteau Sr. has been homeless since August of 2016.

62. Mr. Croteau Sr. slept and lived in his car nearly every night until February 20, 2017.

63. On February 20, 2017, Mr. Croteau's Sr. car was towed on the order of the City.

64. Mr. Croteau Sr. did not have enough money to pay the fee to retrieve his car from the tow company.

65. Since Mr. Croteau's Sr.'s car being towed, he has slept outside.

66. For two weeks Mr. Croteau Sr. slept at a Burlington bus stop.

67. In March of 2017, Mr. Croteau Sr. started living outside in a tent in the woods behind 311 North Avenue in Burlington.

68. Mr. Croteau Sr. currently lives in the woods behind 311 North Avenue in Burlington.

69. Mr. Croteau Sr. has no other place to sleep or shelter himself in the Burlington-area except in public woods.

70. Mr. Croteau Sr. feels safer at this location than any other place in the City.

71. Because an indoor residence is unavailable to him, he intends to remain at this location until such residence becomes available.

72. Larry Priest is a resident of Burlington and has lived in Burlington since June of 2017.

73. Mr. Priest is a Vermonter and was raised in the "Northeast Kingdom."

74. Mr. Priest has been homeless in Burlington since June of 2017.

75. Mr. Priest has sheltered in the woods on public land behind 311 North Avenue in Burlington since July of 2017.

76. Mr. Priest has no other place to sleep or shelter himself in the Burlington-area except in public woods.

77. Mr. Priest feels safer at this location than any other place in the City.

78. Because an indoor residence is unavailable to him, he intends to remain at this location until such residence becomes available.

79. Mr. Priest does not have enough money or other financial resources to pay for indoor shelter.

80. Richard Pursell is a resident of Burlington and has lived in Burlington since June 8, 2016.

81. Mr. Pursell has been homeless and has lived outside since August 19, 2017

82. Mr. Pursell has sheltered in a tent in the woods behind 311 North Avenue in Burlington since August 19, 2017.

83. Mr. Pursell has no other place to sleep or shelter himself in the Burlington-area except in public woods.

84. Mr. Pursell feels safer at this location than any other place in the City.

85. Because an indoor residence is unavailable to him, he intends to remain at this location until such residence becomes available.

86. Long before Plaintiffs' began sheltering in the woods on public land behind 311 North Ave. in Burlington other unsheltered homeless people had been sheltering at the same location.

87. Burlington Police Department officers have repeatedly threatened Plaintiffs and former residents of their encampment with arrest and prosecution pursuant to the City's policy and 13 V.S.A. § 3705.

88. On October 2, 2017, Burlington Police Department officers distributed a written threat stating: "Attention Campers [:] Notice to Vacate . . . you must take your things and leave and not return or face prosecution under 13 V.S.A. § 3705 . . . [if you do not pick up your campsite] the City will remove the camp and all things left on the property on October

23, 2017."

### E. The Plaintiff Class

89.     The named Plaintiffs bring this action on behalf of themselves and all others similarly

situated under Rule 23 of the Federal Rules of Civil Procedure. They seek to represent the

following class.

> All unsheltered homeless people in Burlington who lack a fixed,
> regular, and adequate nighttime residence, living on City property,
> and therefore under threat of the City's enforcement of its policy
> pursuant to 13 V.S.A. § 3705.

90.     This action is brought and may properly be maintained as a class action under Rule

(23)(a)(1)—(a)(4) and Rule 23(b)(2).

### i.     The Proposed Class Satisfies Rule 23(a)

91.     Members of the proposed class are so numerous that joinder is impracticable. The City

has directed written threats to enforce the camping ban against residents of at least two

encampments. Together, these encampments are home to at least thirty unsheltered

homeless people.

92.     Joinder is also impracticable because the proposed class is large, disperse and by

definition, hidden. Joining individual plaintiffs, would not be a practical way to manage

this litigation.

93.     The relief sought is common to all members of the proposed class, and common

questions of law and fact exist as to all members of the classes. Plaintiffs seek

prospective relief from enforcement of the camping ban on a class-wide basis.

94.     Among the most important, but not the only, common questions of law and fact are:

      a.     Are emergency shelter beds available to all homeless in Burlington?

      b.     Is sheltering oneself unavoidable because it is a basic human need?

      c.     Is it reasonable to search and seize private property on the sole basis that it is on public property and not contraband or evidence of a crime?

      d.     Is it reasonable, absent a valid warrant, to search and seize private property belonging to unsheltered homeless people when such private property is not contraband or evidence of a crime?

      e.     Is prospective relief appropriate to stop the City of Burlington from violating the Plaintiffs' rights?

95. The named Plaintiffs' claims are typical of the claims of the proposed class members, and they have the same interests as all other members of the proposed classes that they represent. The named Plaintiffs' claims arise from the same course of conduct as claims of the proposed classes, and their claims are based on the same legal theories as those of the proposed classes.

96. The named Plaintiffs are adequate representatives of the proposed classes because they are members of the class and because their interests coincide with, and are not antagonistic to, those of the class.

97. The named Plaintiffs are familiar with the City of Burlington's ordinances and practices challenged here and the constitutional protections they seek to vindicate. They are prepared to respond to discovery requests in this case. They are committed to fulfilling the role and duties of a class representative protecting the fundamental constitutional rights of Burlington's unsheltered homeless population.

98. The named Plaintiffs are represented by lawyers associated with the American Civil Liberties Union of Vermont. The named Plaintiffs and their attorneys will fairly and adequately protect the interests of the members of the Class.

    **ii.**    **General Applicability, Rule 23(b)(2)**

99.   Class action status is appropriate because the City has acted and refused to act on grounds generally applicable to the proposed class. The City's ordinances apply equally to the class regardless of differences among class members.

100.  Plaintiffs seek final injunctive and declaratory relief protecting them from violation of their constitutional rights.

101.  Injunctive and declaratory relief with respect to each claim would be appropriate to the class as a whole. All members of the proposed class are entitled to the constitutional protections Plaintiffs seek to enforce.

### iii.   Predominance and Superiority, Rule 23(b)(3)

102.  The predominant questions in this case are whether municipal policies violate the proposed class members' constitutional rights. This question is susceptible to generalized, class-wide proof. There is no individualized evidence or legal argument required to succeed on such a claim.

103.  A class action is superior to alternative methods of trying individual claims. In this case, there is no realistic alternative for members of the proposed class to try their claims. As unsheltered homeless people, members of the proposed class are not likely to be able to invest the resources necessary to retain and attorney or bring their claims pro se.

### F.   The City's Shifting and Confusing Policy and Practice of Punishing the Unsheltered Homeless Surviving on Burlington's Public Land.

104.  On October 6, 2017, Plaintiffs' counsel sent a letter to Mayor Miro Weinberger and City Attorney Eileen Blackwood, objecting to the City's planned evictions on constitutional grounds and requesting a response.

105.  Two weeks later, the City has still not responded and is instead proceeding with the threatened evictions at camp of homeless residents near Sears Lane in Burlington.

106.   The City has offered various conflicting statements regarding its policy, practice, and intentions.

107.   Regardless, it has failed to reply to Plaintiff counsel's letter.

108.   The City has maintained publicly, that it has the authority to notice, arrest, and persons found to be living on City property regardless of whether shelter is available.

109.   The City has maintained publicly that it may seize and discard property in camps of homeless Burlington residents it finds on City property.

## Claims for Relief

## Count One: Right Against Cruel and Unusual Punishment

## (42 U.S.C. § 1983 and Eighth Amendment to the U.S. Constitution)

110.   The named Plaintiffs incorporate by reference allegations in the foregoing paragraphs.

111.   The named Plaintiffs bring this claim against the City of Burlington on behalf of themselves and members of the proposed class.

112.   Unsheltered homeless people in Burlington, including named Plaintiffs, are involuntarily in public. They have no place else to go.

113.   Sheltering oneself is not voluntary conduct. It is a basic human need, it is harmless, and it is an act integral to the status of homelessness.

114.   By punishing the act of sheltering oneself in public, Burlington's camping ban effectively punishes the status of homelessness.

115.   In the absence of prospective relief, the named Plaintiffs and class members will be subject to a real threat of being ticketed and arrested in violation of their right against cruel and unusual punishment. On behalf of themselves and the prospective class, the named Plaintiffs seek declaratory and injunctive relief against the City of Burlington.

## Count Two:  Right Against Unreasonable Searches and Seizures

### (42 U.S.C. § 1983 and Fourth Amendment to the U.S. Constitution)

116. The named Plaintiffs incorporate by reference allegations in the foregoing paragraphs.

117. The named Plaintiffs bring this claim on behalf of themselves and prospective class.

118. Unsheltered homeless people in Burlington, including the named Plaintiffs, are involuntarily in public.  They have no place else to store and access their possessions.

119. It is unreasonable to directly seize private property belonging to unsheltered homeless people, or to force unsheltered homeless people to abandon their property, solely because it belongs to an unsheltered homeless person.

120. These threatened seizures violate the right against unreasonable seizures under the Fourth Amendment to the United States Constitution.

121. In the absence of prospective relief, the named Plaintiffs and class members will be subject to a real threat of seizure and/or forced abandonment of their property in violation of the right against unreasonable seizures. On behalf of themselves and the prospective class, the named Plaintiffs seek declaratory and injunctive relief against the City of Burlington.

### Count Three: Right to Travel

### (42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution)

122. The named Plaintiffs incorporate by reference allegations in the foregoing paragraphs.

123. The Notice to Vacate states that Plaintiffs must vacate their camps and bans them from ever returning.

124. Plaintiffs have a constitutional right to be on public land for innocent purposes.

125. The Notice to Vacate does not permit the Plaintiffs to return to the same public land for any purpose – innocent or otherwise.

**Request for Relief**

Plaintiffs request that this Court issue the following relief:

1. An order certifying the proposed class;

2. An injunction prohibiting:

   a. The enforcement of Vermont's Trespass Statute codified 13 V.S.A. 3705 against the Plaintiffs and the putative class, and

   b. The seizure of private property of unsheltered homeless people on the basis that the private property is on public land.

3. A declaration that the enjoined conduct violates the Plaintiffs' constitutional rights as alleged;

4. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and

5. Any other relief this Court deems just and proper.

The Plaintiff asserts his right to a trial by jury.

Respectfully Submitted,

The American Civil Liberties Union Foundation of Vermont

By:

James M. Diaz, Esq.
ACLU Foundation of Vermont
137 Elm Street
Montpelier, VT 05602
(802) 223-6304
jdiaz@acluvt.org
**Attorney for Plaintiffs**

Jared Carter
C/O ACLU Foundation of Vermont
137 Elm Street

Montpelier, VT  05602
(802) 223-6304
jaredkcarter@gmail.com
**Attorney for Plaintiffs**