UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 DEC -4 PM 1:41

CLERK
BY ⟨AW⟩
DEPUTY CLERK

| | |
|---|---|
| BRIAN CROTEAU, LARRY PRIEST, RICHARD PURSELL on behalf of themselves and all other similarly situated, <br> *Plaintiffs* <br> vs. <br> CITY OF BURLINGTON <br> *Defendant* | Civil Action No., 5:17 – CV- 207 |

## SECOND SUPPLEMENT TO INTERVENORS' COMPLAINT

TO THE HONORABLE JUDGE GEOFFREY CRAWFORD:

Your intervening plaintiffs supplement their complaint – Count Eight as follows:

### Supplement to Preface

1. The Religious Freedom Restoration Act of 1993 (RFRA) prohibits the "Government [from] substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U. S. C. §§2000bb–1(a), (b).

2. As amended by the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), RFRA covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." §2000cc–5(7) (A). See e.g., Burwell v. Hobby Lobby, 573 U.S. ___ (2014).

### Supplement to Count Eight Claim

3. At issue here are laws of the City of Burlington and the State of Vermont which prohibit begging (soliciting, panhandling etc.) and hence substantially burden our giving of alms (and other aid, counsel, and comfort) by the one-to-one giving of charity to the person in need or want. Including substantially burdening the exercise of vows of poverty and the practice of bare subsistence living.

1

4. For example, Chapter 23 § 15, Chapter §§ 21, 28, 8, are land-use regulations which are impermissibly over-broad (includes Churches, Temples, and other places of worship and assembly).

5. RFRA's text shows that Congress designed the statute to provide very broad protection for religious liberty.

> *"(a) Substantial burdens*
> *"(1) General rule. No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—*
> *(A) is in furtherance of a compelling governmental interest; and*
> *(B) is the least restrictive means of furthering that compelling governmental interest.*
> *(2) Scope of application. This subsection applies in any case in which—*
> *(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;*
> *(B) \*\*\**
> *(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.*
> *(b) Discrimination and exclusion*
> *(1) Equal terms*
> *No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.*
> *(2) Nondiscrimination*
> *No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.*
> *(1) Equal terms*
> *No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.*
> *(2) Nondiscrimination*
> *No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.*
> *(3) Exclusions and limits. No government shall impose or implement a land use regulation that*
> *(A) totally excludes religious assemblies from a jurisdiction; or*
> *(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.*

(Pub. L. 106–274, § 2, Sept. 22, 2000, 114 Stat. 803.)

6. We contend the anti-solicitation and vagrancy laws are tied into land use regulation. They substantially burden plaintiffs' exercise of religion (even if the law is of general applicability) (which we contend such laws are not).

7. We allege the state/city cannot "demonstrate[] that application of the burden to plaintiffs —(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Burwell v. Hobby Lobby. Supra.

8. Plaintiffs aver the state/city imposes or implement such land use regulation in a manner that treats our religious assembly (e.g., solicitor and solicitee) (or multiple solicitors and solicitees) or our institution (i.e., Burlington Homeless Council; Stand w/ the Poor PAC; Burlington Street News) on less than equal terms with a nonreligious assembly or institution; or imposes or implements a land use regulation that discriminates against our assembly or institution on the basis of religion or religious denomination; or imposes or implement a land use regulation that—(A) totally excludes our religious assemblies from a jurisdiction; or (B) "unreasonably limits our religious assemblies, institutions, or structures within a jurisdiction."

9. Pleading further the federal law employs the familiar legal fiction of including corporations within RFRA's definition of "persons." The purpose of extending rights to corporations is to protect the rights of people associated with the corporation, including shareholders, officers, and employees. Protecting the free-exercise rights of closely held corporations thus protects the religious liberty of the humans who own and control them. Nothing in RFRA suggests a congressional intent to depart from the Dictionary Act definition of "person," which "include[s] corporations, . . . as well as individuals." 1 U. S. C. §1. Our courts have entertained RFRA and free-exercise claims brought by nonprofit corporations. See, e.g., Gonzales v. O Centro Espírita Beneficiente União do Vegetal, 546 U. S. 418. Further business practices limited or compelled by the tenets of a religious doctrine fall comfortably within the understanding of the "exercise of religion." See Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U. S. 872. Id.

3

10. Vermont statutes otherwise generally authorizes charities and businesses to pursue any lawful purpose including activities in conformity with the organizers' religious principles or honest convictions.

11. "As enacted in 1993, RFRA applied to both the Federal Government and the States, but the constitutional authority invoked for regulating federal and state agencies differed. As applied to a federal agency, RFRA is based on the enumerated power that supports the particular agency's work, 4 but in attempting to regulate the States and their subdivisions, Congress relied on its power under Section 5 of the Fourteenth Amendment to enforce the First Amendment. 521 U. S., at 516–517. In City of Boerne, however, we held that Congress had overstepped its Section 5 authority because "[t]he stringent test RFRA demands" "far exceed[ed] any pattern or practice of unconstitutional conduct under the Free Exercise Clause as interpreted in Smith." Id., at 533–534. See also id., at 532. Following our decision in City of Boerne, Congress passed the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114Stat. 803, 42 U. S. C. §2000cc et seq. That statute, enacted under Congress's Commerce and Spending Clause powers, imposes the same general test as RFRA but on a more limited category of governmental actions. See Cutter v. Wilkinson, 544 U. S. 709–716 (2005). And, what is most relevant for present purposes, RLUIPA amended RFRA's definition of the "exercise of religion." See §2000bb–2(4) (importing RLUIPA definition). Before RLUIPA, RFRA's definition made reference to the First Amendment. See §2000bb–2(4) (1994 ed.) (defining "exercise of religion" as "the exercise of religion under the First Amendment"). In RLUIPA, in an obvious effort to effect a complete separation from First Amendment case law, Congress deleted the reference to the First Amendment and defined the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." §2000cc–5(7) (A). And Congress mandated that this concept "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." §2000cc–3(g). Burwell v. Hobby Lobby. Supra.

12. The state/city's regulations substantially burden our sincere religious belief and activities of relieving poverty. RFRA's question is whether the complained mandates imposes a substantial burden on the objecting parties' ability to conduct activities in accordance with their religious beliefs. The "honest conviction" of Mark Flynn and the associations he belongs to as well as help create is to encounter those in need and assist them personally. It is not for the Court to say that the religious beliefs of the plaintiffs are mistaken or unreasonable. Burwell citing Thomas v. Review Bd. of Indiana Employment Security Div., 450 U. S. 707 [t]he Court's "narrow function . . . is to determine" whether the plaintiffs' asserted religious belief reflects "an honest conviction," id., at 716. Unquestionably the giving of direct-assistant to the less fortunate implicates important questions of religion and moral philosophy. Assisting the poor where they are at and immediately – lays at the heart of relieving their

4

suffering; restoring hope; and demonstrating compassion and understanding of their plight including any exigent circumstances.

13. In sum, the city and state must show it satisfies RFRA's least-restrictive-means standard. The government must show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion.

Respectfully submitted on this 4th day of December 2017 by:

c/o:  Mark Flynn pro se
184 Elmwood Ave # 206
Burlington, VT. 05402
(802) 488-4869
mark-flynn@mail.com


c/o:  Curt Fifield pro se
Northwest State Correctional Facility
3649 Lower Newton St.
Swanton, VT 05488

### CERTIFICATE OF SERVICE

The undersigned certify a true and correct copy of the foregoing complaint was mailed via regular mail to an attorney of record for each party on the 4th day of December 2017.

_____
Mark Flynn


_____
Curt Fifield

5