U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 OCT -9 PM 3: 17

CLERK
BY_____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT**

BRIAN CROTEAU Sr.,

        Plaintiff,

    v.

CITY OF BURLINGTON,

        Defendant.

Civil Action No. 5:17-cv-207

## AMENDED COMPLAINT

### Introduction

1. Plaintiff Brian Croteau Sr. is a homeless individual sleeping and sheltering on city-owned wooded property because he has no other option.

2. Because he has no place to store his personal possessions, he keeps nearly everything he owns with him at his sheltering site.

3. Since he began sheltering on city-owned wooded property in March 2017, the Defendant, the City of Burlington, has twice seized and destroyed his personal property, including property necessary to survive while sleeping outdoors. This property has included tents, sleeping bags, blankets, clothes, tarps, food, bags for carrying personal property, storage containers, and a cooler to keep food, among other personal possessions.

4. The Defendant's first seizure of Mr. Croteau's possessions occurred on November 9, 2017, shortly after this Court vacated a temporary restraining order barring the Defendant from subjecting Mr. Croteau Sr. to its Encampment Removal Procedure Guidelines.

5. The Defendant's employees, agencies, and/or agents conducted the November 9, 2017 seizure of Mr. Croteau Sr.'s possessions, failed to store them as promised in their notice,

1

and destroyed them.

6.  The second seizure, which left Mr. Croteau Sr. with almost no personal possessions of his own, occurred on or about June 7, 2018. Mr. Croteau Sr. was not provided notice of this planned seizure and destruction of his property.

7.  According to the Defendant, its employees, agencies, and/or agents removed possessions from Mr. Croteau's sheltering site on or about June 7, 2018, did not store anything removed, and only left Mr. Croteau Sr.'s bicycles that had been locked to nearby trees.

8.  According to the Defendant, as of July 18, 2018, it has not established a policy related to the storage of homeless persons' seized property.

9.  In fact, as evidenced by the Defendant's regular practice (described in section D *infra*) of seizing and destroying the property of homeless persons, the Defendant has not had a homeless persons' property storage policy and has not otherwise directed, trained, and/or supervised its employees, agencies, and/or agents in order to protect homeless persons' personal possessions.

10. Mr. Croteau Sr. brings this suit for declaratory and injunctive relief, and compensatory damages, pursuant to 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as Articles 4 and 11 of the Vermont Constitution, to ensure the Defendant adequately protects the constitutional rights and seized possessions of homeless individuals, including himself.

## Jurisdiction and Venue

11. This is a civil rights action pursuant to 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Articles 4 and 11 to the Vermont Constitution.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1343(a), and 1367(a).

13.   Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure
      57.

14.   Injunctive relief is authorized by Federal Rule of Civil Procedure 65.

15.   This Court has personal jurisdiction over the City of Burlington because it is located in
      the District of Vermont and the events that give rise to this action occurred within the
      District of Vermont.

16.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**Plaintiff**

17.   Mr. Croteau Sr. is a resident of Burlington, Vermont, and has lived in Burlington for most
      of his life.

18.   At all times relevant to this suit, Mr. Croteau Sr. was and continues to be a "homeless
      individual" as defined by the U.S. Department of Housing and Urban Development. *See*
      P.L. 111-22, Section 1003(a)(1), (2), and (3).

**Defendant**

19.   The Defendant, City of Burlington, is a municipality located in Chittenden County, in the
      State of Vermont, with administrative offices at 149 Church Street, Burlington, VT
      05401.

20.   At all times relevant to this suit, the Defendant was and is a "person" acting under color
      of law for purposes of 42 U.S.C. § 1983.

21.   At all times relevant to this suit, Defendant owned, controlled, managed, supervised, and
      directed the Burlington Department of Parks Recreation and Waterfront, the Burlington
      Police Department, the Burlington Department of Public Works, the Burlington
      Community and Economic Development Office, and the Burlington Office of the City

Attorney, as well as the employees and agents thereof.

## Facts

*A. Mr. Croteau Sr. Is a Life-long Burlington Resident Attempting to Remain in His Hometown Despite Great Hardship*

22.   Mr. Croteau Sr. was born in Burlington, Vermont.

23.   Mr. Croteau Sr. is not a risk of imminent danger to himself, others, or property.

24.   Mr. Croteau Sr. has been homeless since August of 2016.

25.   Mr. Croteau Sr. slept and lived in his car nearly every night until February 20, 2017.

26.   On February 20, 2017, Mr. Croteau's Sr. car was towed on the order of the Defendant's employees.

27.   Mr. Croteau Sr. did not have enough money to pay the fee to retrieve his car from the tow company.

28.   Since Mr. Croteau's Sr.'s car was towed, he has regularly slept outside for lack of a lawful indoor space available to him.

29.   For the first two weeks of homelessness, Mr. Croteau Sr. slept at a Burlington bus stop.

30.   In March of 2017, Mr. Croteau Sr. started sheltering in a tent in the woods behind 311 North Avenue in Burlington.

31.   Although being forced out of two separate areas by the threatened and actual seizure of his personal property, Mr. Croteau Sr. has had no choice but to continue sheltering and surviving in city-owned wooded areas.

32.   Mr. Croteau Sr. currently lives in a city-owned wooded area.

33.   Mr. Croteau Sr. has no other place to lawfully sleep and shelter himself in the Burlington-area except on city-owned wooded land.

34.   Because an indoor residence is unavailable to him, he intends to remain at this location

until such residence becomes available or he is rousted by the Defendant's employees again.

35. Mr. Croteau Sr. has only sheltered on city-owned woods in Burlington where other unsheltered homeless people have been sheltering for several months or years before.

   B. *The Defendant Twice Seized and Destroyed Mr. Croteau Sr.'s Property Without Due Process of Law*

36. In October 2017, the Defendant threatened Mr. Croteau Sr., among others, with arrest for sheltering in a city-owned wooded area behind 311 North Avenue.

37. After this Court denied Mr. Croteau Sr.'s motion for a preliminary injunction, the Defendant provided a new notice to Mr. Croteau Sr. requiring him to remove his possessions from 311 North Avenue no later than November 9, 2017 at 8am. The notice further stated that if Mr. Croteau Sr. did not remove his personal possessions by that date and time, the possessions would be seized and stored for 30 days.

38. By November 8, 2017, Mr. Croteau Sr. moved most of his possessions to a different city-owned wooded area, an area near the old Dump Road which is now the 127 bypass, where homeless individuals have sheltered for at least several years.

39. Mr. Croteau Sr. was not able to move all of his possessions and placed certain possessions in front of 311 North Avenue in the early morning of November 9, 2017.

40. Despite the City of Burlington's written promise to store Mr. Croteau Sr.'s possessions for 30 days, upon information and belief, the Defendant seized the possessions left in front of 311 North Avenue and destroyed it that same day.

41. Mr. Croteau Sr. was deprived of his property because the Defendant failed to store it as promised, and instead seized and destroyed it.

42. In June 2018, Mr. Croteau Sr. was still sheltering in the area near the old Dump Road

which is now the 127 bypass.

43. His sheltering site consisted of tents, sleeping bags, clothes, food, and other personal possessions.

44. On or about the morning of June 7, 2018, Mr. Croteau Sr. left his sheltering site to gather supplies and help a friend.

45. On or about June 7, 2018, the Defendant's Department of Parks Recreation and Waterfront conducted a "clean up" of the area where Mr. Croteau Sr. had been sheltering.

46. The Defendant's employees, agencies, and/or agents did not place notices in the area regarding any planned "clean up" or a requirement to vacate or remove possessions.

47. When Mr. Croteau Sr. returned to his sheltering site the following day, his tents, sleeping materials, clothes, food, and most other possessions were gone.

48. The Defendant's employees, agencies, and/or agents seized and destroyed Mr. Croteau Sr.'s possessions.

49. Mr. Croteau Sr. was not provided notice of the seizure and destruction of his personal possessions.

50. Mr. Croteau Sr. was not provided an opportunity to challenge the seizure and destruction of his personal possessions before they were destroyed.

51. As a result of the Defendants' actions, Mr. Croteau Sr. was left without his own shelter, sleeping implements, clothes, food, and most of the few personal possessions he owned.

52. Luckily a fellow sheltering homeless person gave Mr. Croteau Sr. a tent to shelter in, but he is still without a sleeping bag or anything to sleep on.

53. The Defendant's repeated seizure and destruction of his property have caused Mr. Croteau Sr. great distress because he feels there is no place for him to live in his hometown without risking the seizure of his property by the Defendant's employees,

agencies, and/or agents.

54.    As a result, Mr. Croteau has suffered extreme hardship, stress, and physical pain.

    *C.  Defendant's Policy and Practice Regarding Homeless People Sheltering on Public Land*

55.    Since at least 2014, the City of Burlington has used 13 V.S.A. § 3705 to threaten to arrest homeless residents and seize/destroy their property when they are found sleeping or camping on wooded city-owned land, despite the Defendant's employees knowing that Burlington's shelters are full.

56.    The Defendant allegedly responds to outdoor homeless sheltering sites according to its "Encampment Removal Procedure Guidelines."

57.    The Encampment Removal Procedure Guidelines have never been approved by the City Council and have remained in draft form since at least August 26, 2016.

58.    Before these Guidelines were drafted, the Defendant had an earlier written draft "Encampment Policy" dated September 2, 2014.

59.    According to the 2016 Encampment Removal Procedure Guidelines, when Defendant's employees, agencies, and/or agents find homeless residents sheltering on city-owned wooded land, the Defendant's employees will review the situation internally to determine whether to "dismantle" the sheltering site based on "the location, an assessment of the living conditions health or safety issues, reported interference with the ability of others to use the property, or repeated legal violations at the site."

60.    When the Defendant's employees, agencies, and/or agents determine "the encampment should be disbanded" based on these criteria, the policy requires city employees to post a general trespass notice threatening arrest of individuals and/or seizure of property remaining at the site after the specified date.

61.     Mr. Croteau Sr. has received two such notices.

62.     Mr. Croteau Sr. received a notice in October 2017, stating that:

>       All people currently living or visiting this area without the permission of the Owner of this property (City of Burlington) are being given notice by the Owner that You are trespassing on the property and must take your things and leave and not return or face prosecution under 13 V.S.A. § 3705 for trespass and removal of the things you leave on the property. It is important for you to pick up your campsite and move it off this property. If you don't, the City will remove the camp and all things left on the property on October 10, 2017. Please take care to protect your valuables (important papers, money ID's) and other things you want to keep.

63.     The Defendant has used nearly identical notices on previous occasions to give notice to

        sheltering homeless persons found on city-owned wooded areas.

64.     After this Court's vacatur of its temporary restraining order, the Defendant provided Mr.

        Croteau Sr. a second notice on or about November 2, 2017. This notice, entitled "notice

        to remove possessions," stated that:

>       This property is owned by the City of Burlington. Camping or leaving things here is not allowed. Anyone who is camping or leaving things here must remove all belongings, including camping equipment by 8 AM, November 9th, 2017. On that date, the city will immediately dispose of property that appears to be trash or that creates a public health risk. All other items will be stored by the city for a period of 30 days. You may reclaim this property by contacting: Lacey Smith, Community Affairs Liaison, 802. 540.2393, M-F 8:30-5pm. After 30 days, the city may dispose of unclaimed property without further notice.

65.     The Encampment Removal Procedure Guidelines do not reference the notice language,

        except to say that "the City will provide written notice that structures and camping are

        not allowed on this property and that if the camp is not dismantled and removed by a

        specified date, the City will remove it."

66.     The Encampment Removal Procedure Guidelines provide that when sheltering homeless

        individuals do not voluntarily move from a sheltering site, the Department of Public

Works and the Department of Parks Recreation and Waterfront will be notified "to help with a truck and personnel to dismantle and remove debris."

67.   The Encampment Removal Procedure Guidelines do not inform the Defendant's employees, agencies, and/or agents of what to do with personal property found at the sheltering sites of homeless individuals during "encampment removal."

68.   The Encampment Removal Procedure Guidelines do not inform the Defendant's employees, agencies, and/or agents of how to separate, store, manage, and care for the personal property seized from sheltering sites.

69.   The Encampment Removal Procedure Guidelines do not inform the Defendant's employees, agencies, and/or agents of individuals' constitutional right to not be deprived of their property absent due process of law.

70.   The Defendant has no consistent policy or practice related to separating, storing, managing, and caring for personal property seized from sheltering sites.

71.   As a result, on or about the noticed date for encampment removal, the Defendant's employees and/or agents, usually under the management and at the direction of the Burlington Parks, Recreation and Waterfront, Burlington Police Department, and/or Burlington Department of Public Works, typically remove and discard any property remaining at or near the sheltering site.

   D.  *Defendant's Regular Practice of Seizing and Destroying the Personal Possessions of Homeless Residents Sheltering on City-owned Land*

72.   Although the Defendant has stored a few personal possessions seized from sheltering homeless individuals, the Defendant and its employees, agencies, and/or agents also have a regular practice of seizing and destroying homeless individuals' personal possessions.

73.   For example, in May 2016, the Defendant's employees and high-ranking officials in the

Burlington Police Department, Burlington Department of Parks Recreation and
Waterfront, and the Burlington Community and Economic Development Office became
aware of a homeless couple sheltering in a "bike trailer" in a city-owned wooded area.
The couple had emailed the Defendant's employee, Deryk Roach, about their situation
and that email was circulated among several of the Defendant's staff members and
officials.

74.    The bike trailer was the personal property of the couple to allow them to seek shelter
       from the elements. The couple had been sheltering in the bike trailer at that location for at
       least several months. Upon information and belief, the couple kept personal belongings
       in their shelter.

75.    During the following month after their email had been received and circulated, the
       Defendant's employees, agencies, and/or agents seized and discarded the bike trailer.

76.    The couple was not provided any information on how to retrieve their bike trailer after it
       was seized or whether it would be stored.

77.    As stated by the couple, the Defendant's employees, agencies, and/or agents did not store
       the bike trailer.

78.    As stated by the individuals, the Defendant's employees did not provide them with an
       opportunity to challenge the seizure or proposed destruction of their property before
       destroying it.

79.    Similarly, on September 30, 2017, the Defendant's employees, agencies, and/or agents
       seized and destroyed the personal property of a homeless person sheltering near City
       Hall.

80.    Video recordings of Burlington Police Department Officer statements show that the
       individual was known by the officers to be homeless and to have previously sheltered

himself and his possessions on city-owned property.

81.   In this instance, the individual and his possessions were located in the green space on the south side of City Hall.

82.   Minutes after the man was arrested for acting erratically, video recordings show the involved Burlington Police Officers discussing what to do with the individual's possessions.

83.   The officers decided to contact the Department of Public Works to have the entirety of the homeless individual's possessions discarded.

84.   Upon information and belief, the officers never discussed storing the individual's property.

85.   Upon information and belief, the Defendant's employees, agencies, and/or agents seized and immediately discarded the individual's possessions that morning.

86.   Upon information and belief, the Defendant's employees, agencies, and/or agents did not provide the arrested individual with notice of the seizure or destruction of the property.

87.   Upon information and belief, the Defendant's employees did not provide the individual with an opportunity to challenge the seizure or proposed destruction of the property before destroying it.

88.   A few weeks later, on October 19, 2017, the Defendant's employees seized and discarded the property of homeless individuals sheltering on city-owned wooded land off of Sears Lane.

89.   According to one homeless individual's recorded statement, the Defendant's employees, agencies, and/or agents discarded tents and other personal possessions.

90.   According to the homeless individuals' recorded statements, the Defendant's employees, agencies, and/or agents did not give them the option to retain possession of their personal

property or to have it stored.

91. On information of belief, since 2014 there have been other instances where the Defendant's employees, agencies, and/or agents seized and/or destroyed the property of homeless individuals sheltering, sitting, or otherwise being present on city-owned land.

92. At times, the seizures and destruction of property were done without notice.

93. At times, the owners of the destroyed possessions were not provided an opportunity to challenge the seizures before the Defendant's employees, agencies, and/or agents destroyed them.

94. The Defendant's employees, agencies, and/or agents have seized/destroyed the property of sheltering homeless individuals without regard to whether the individuals can access housing, property storage, or other meaningful supports.

   *E. The Defendant Knowingly Failed to Direct, Train, and/or Supervise Its Employees and Agents, Resulting in the Repeated Unconstitutional Seizure and Destruction of Sheltering Homeless Persons' Possessions*

95. Since at least 2016, the Defendant's policymakers have been aware of the unconstitutional nature of seizing and destroying the possessions of sheltering homeless residents, and the high likelihood that the Defendant's employees, agencies, and/or agents conducting sheltering site "clean ups" would be forced to make difficult decisions regarding whether to discard or store sheltering persons' property.

96. On June 3, 2016, ACLU of Vermont Staff Attorney Jay Diaz emailed Community Liaison Lacey-Ann Smith and Police Chief Brandon del Pozo, asking what would be done with the belongings of sheltering homeless individuals in an encampment that was set for removal by the Defendant.

97. That same day, Chief del Pozo responded to the email stating that "Persons who abandon their property on city land are guilty of dumping . . . . Instead of criminalizing the the

[sic] homeless for these crimes/violations, we may elect to discard the property they have dumped."

98. In fact, any personal property allegedly left on city-owned land does not mean the person is in violation of the Dumping Ordinance contained in the Burlington Code of Ordinances.[1]

99. Chief del Pozo also wrote that Defendant had no obligation to store the remaining personal possessions of homeless residents sheltering on city-owned land.

100. On June 7, 2016, Mr. Diaz responded to Chief del Pozo, copying City Attorney Eileen Blackwood, and Ms. Smith.

101. Mr. Diaz responded to Chief del Pozo's assertion that the Defendant had no storage obligations, citing a web link about the Ninth Circuit's decision in *Lavan v. City of Los Angeles*.

102. The link describes the Ninth Circuit's ruling that the City of Los Angeles violated the Fourth and Fourteenth Amendments to the U.S. Constitution when it "seized and destroyed the abandoned property of homeless people."

103. According to an October 10, 2017 statement from Chief del Pozo, the Defendant's policy related to sheltering persons' possessions has allegedly shifted slightly.

104. The October 10, 2017 statement alleged that seized personal possessions deemed by the Defendant to be "of value" would be stored for a period of 30 days.

105. Upon information and belief, the Defendant's policymakers have not established any

---

[1] 14-6 Illegal Dumping

   (a) It shall be unlawful for any person, business or corporation to enter any City facility when such facility is not open, nor shall they deposit, dump or leave solid waste of any kind in any such facility or adjacent thereto, whenever the facility is open without the express permission of the authorized operator of said facility.

   (b) It shall be unlawful for any person to deposit, dump or leave solid waste in any privately owned or maintained disposal container other than their own, nor any other private property, without the consent of the owner.

   (c) It shall be unlawful to deposit in a municipally owned or maintained disposal container any solid waste other than that created or originated in any public buildings, grounds, highways or on the person of anyone using such public

policy or guidelines for determining which of a sheltering homeless individual's possessions are "of value," requiring storage.

106. Upon information and belief, the Defendant's policymakers have not directed, advised, or trained the Defendant's employees how to determine which of a sheltering homeless person's possessions are "of value," requiring storage.

107. The Defendant knows and has known that its employees, agencies, and/or agents will face difficult decisions where sheltering homeless persons' constitutional rights are at stake, but has chosen to take no action to prevent constitutional violations.

108. For example, according to a June 22, 2018 letter from the Defendant's counsel, the Defendant is aware that its employees, agencies, and/or agents are in a "difficult situation . . . when [they] find[] items on public land that appear to be garbage and no one is around to claim otherwise."

109. The letter, a response to Mr. Diaz's urgent email regarding Mr. Croteau Sr.'s seized property, elaborated on the employees', agencies', and/or agents' difficult predicament: "Your recent inquiry about belongings that you assert Mr. Croteau intended to keep only serves to re-inforce [sic] how difficult it would be for a City employee to make a determination on the value or existence of objects in the absence of the owner."

110. At the time of the seizure and destruction of Mr. Croteau Sr.'s personal possessions, the Defendant still had not established a policy regarding the separation, storage, management, or caring for the personal possessions of homeless persons removed for city-owned land.

111. Upon information and belief, the Defendant's policymakers have not directed, advised, or trained the Defendant's employees how to determine whether to keep or discard a

---

buildings, grounds or highways without the express permission of the City Department having control over such

sheltering homeless person's possessions remaining at a sheltering site.

112.   Upon information and belief, the Defendant's policymakers have not supervised the

Defendant's employees, agencies, and/or agents in such a manner as to prevent the

seizing and destruction of sheltering homeless persons' possessions.

113.   As a result of the Defendant's failure to direct, train, and/or supervise its employees,

agencies, and/or agents in the separation, storage, management, and caring for the

personal possessions of homeless individuals, Mr. Croteau Sr.'s personal possessions

were seized and destroyed on two separate occasions without due process of law.

114.   Despite knowledge of the difficult situation likely to be faced by its employees, agencies,

and/or agents, the Defendant's draft Encampment Removal Procedure Guidelines have

not changed since August 26, 2016—referencing the "dismantling" of homeless

sheltering sites and removal of any remaining personal property, but never mentioning

that homeless persons' personal possessions should be separated, cared for, and stored.

**Claims for Relief**

**FIRST CAUSE OF ACTION**
**VIOLATION OF MR. CROTEAU SR.'S RIGHT AGAINST UNREASONABLE**
**SEARCH AND SEIZURE**

**(Claim under 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments to the U.S.**
**Constitution and Article 11 of the Vermont Constitution)**

115.   Mr. Croteau Sr. incorporates allegations 1-114 by reference as if set forth here.

116.   The Fourth Amendment to the United States Constitution, made applicable to the states

by the Fourteenth Amendment, prohibits unreasonable searches and seizures.

117.   The Defendant's employees, agencies, and/or agents, acting under color of state law,

violated Mr. Croteau Sr.'s rights under the Fourth and Fourteenth Amendments to the

container.

U.S. Constitution and Article 11 of the Vermont Constitution by, among other things, seizing and destroying his personal possessions on two occasions without a warrant or court order.

118.   Upon information and belief, Defendant has, as a matter of policy, practice, and/or custom, and with deliberate indifference to the rights of citizens, failed to properly direct, train, or supervise its employees, agencies, and/or agents concerning the rights of its citizens, thereby causing them to engage in the unlawful conduct described above.

119.   Upon information and belief, Defendant has, with deliberate indifference to the rights of citizens, developed, implemented, encouraged, and sanctioned a de facto policy, practice, and/or custom of unlawfully seizing and destroying the personal property of homeless individuals without a warrant or court order.

120.   These violations are redressable under 42 U.S.C. § 1983 and Article 11 of the Vermont Constitution.

## SECOND CAUSE OF ACTION
## VIOLATION OF MR. CROTEAU SR.'S FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS

**(42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution and Article 4 of the Vermont Constitution)**

121.   Mr. Croteau Sr. incorporates allegations 1-114 by reference as if set forth here.

122.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons due process of the law before being deprived of life, liberty, or property.

123.   The Defendant's employees, agencies, and/or agents, acting under color of state law, violated Mr. Croteau Sr.'s rights under the Fourteenth Amendment to the U.S. Constitution and Article 4 of the Vermont Constitution by, among other things, seizing

and destroying his personal possessions on two occasions without a warrant, court order, or adequate notice and an opportunity to challenge the proposed action.

124.    Upon information and belief, Defendant City of Burlington has, as a matter of policy, practice, and/or custom, and with deliberate indifference to the rights of citizens, failed to properly direct, train, or supervise its employees, agencies, and/or agents concerning the rights of its citizens, thereby causing them to engage in the unlawful conduct described above.

125.    Upon information and belief, Defendant City of Burlington has, with deliberate indifference to the rights of citizens, developed, implemented, encouraged, and sanctioned a de facto policy, practice, and/or custom of unlawfully seizing and destroying the personal property of homeless individuals without a warrant, court order, or adequate notice and an opportunity to challenge the proposed action.

126.    These violations are redressable under 42 U.S.C. § 1983 and Article 4 of the Vermont Constitution.

**Request for Relief**

Plaintiffs request that this Court issue the following relief:

1.      An injunction prohibiting:

   a.  The Defendant from seizing and destroying sheltering homeless persons' possessions, except as permitted by a warrant or court order, or with adequate pre-deprivation notice and an opportunity to challenge the proposed action;

   b.  The development, implementation, enforcement, encouragement, and/or sanctioning of a de facto policy, practice, and/or custom of unlawfully seizing and destroying sheltering homeless persons' property, regardless of the alleged value, as long as it does not pose a health or safety hazard.

2.     A declaration that the Defendant violated Mr. Croteau Sr.'s Fourth and Fourteenth
       Amendment and Article 11 rights to be free from unreasonable search and seizure,
       and his Fourteenth Amendment and Article 4 rights to due process of law;

3.     Compensatory damages for Mr. Croteau's loss of personal property, past and
       ongoing distress experienced as a result of the Defendant's unlawful conduct, and
       the violation of his constitutional rights;

4.     An order and judgment granting reasonable attorneys' fees and costs pursuant to
       42 U.S.C. § 1988, and

5.     Any other relief this Court deems just and proper.

Mr. Croteau Sr. asserts his right to a trial by jury.

Respectfully Submitted,

The American Civil Liberties Union Foundation of Vermont

By: _____

James M. Diaz
Lia Ernst
Staff Attorneys
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
(802) 223-6304
jdiaz@acluvt.org
lernst@acluvt.org
**Attorneys for Plaintiff**

Jared Carter
ACLU-VT Cooperating Attorney
C/O ACLU Foundation of Vermont
PO Box 277Montpelier, VT  05601
(802) 223-6304
jaredkcarter@gmail.com
**Attorney for Plaintiff**

Gary Sarachan, Esq.

ACLU-VT Cooperating Attorney
C/O ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
(802) 223-6304
Sarachan@capessokol.com
**Attorney for Plaintiff**